**UNITED STATES, Appellee**

v.

**Robert D. OLIVERO, Staff Sergeant
U.S. Air Force, Appellant.**

No. 68,335.
CMR No. S28424.

U.S. Court of Military Appeals.

Argued Oct. 7, 1993.

Decided June 3, 1994.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Terry J. Woodhouse* (on brief); *Colonel Jay L. Cohen* and *Major Mary C. Yastishock.*

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Colonel Richard L. Purdon* and *Captain Jane M.E. Peterson* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of using marijuana and committing perjury, in violation of Articles 112a and 131, Uniform Code of Military Justice, 10 USC §§ 912a and 931, respectively. The approved sentence provides for a bad-conduct discharge, confinement for 4 months, reduction to the lowest enlisted grade, and a reprimand. The Court of Military Review affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issues:

## I (Modified)

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO GRANT APPELLANT'S MOTION TO DISMISS BECAUSE THE GOVERNMENT'S DECISION TO PROSECUTE WAS BASED ON IMMUNIZED TESTIMONY. *See Kastigar v. United States,* 406 U.S. 441, 460–61, 92 S.Ct. 1653, 1664–65, 32 L.Ed.2d 212 (1972); *Cunningham v. Gilevich,* 36 MJ 94 (CMA 1992); *United States v. Kimble,* 33 MJ 284, 291 (CMA 1991).

## II

WHETHER THE MILITARY JUDGE ERRED BY FINDING APPELLANT GUILTY OF PERJURY, CHARGE II AND ITS SPECIFICATION, BECAUSE THE EVIDENCE PRESENTED FAILED TO SUFFICIENTLY PROVE THE FALSITY OF APPELLANT'S STATEMENT WITH TWO WITNESSES OR ONE WITNESS AND INDEPENDENT CORROBORATION.

### Factual Background

The charges in this case arose out of a drug investigation in which Technical Sergeant (TSgt) Terry Stuart was a subject. As a part of that investigation, Captain Humphrey, Chief of Military Justice at March Air Force Base, California, interviewed TSgt Stuart's wife in June 1990. Mrs. Stuart told Capt. Humphrey that she had "used marijuana with" appellant. Because Mrs. Stuart also said that appellant was "a possible person using marijuana with her husband," Capt. Humphrey requested immunity for appellant as "a potential witness against" TSgt Stuart. Capt. Humphrey made no notes of this interview with Mrs. Stuart, and Mrs. Stuart's statement was never reduced to writing.

On August 1, 1990, the general court-martial convening authority gave appellant testimonial immunity regarding his knowledge of TSgt Stuart's use of controlled substances. The Government did not certify, seal, or memorialize any evidence of appellant's drug use prior to this grant.

On August 2, 1990, Capt. Humphrey gave appellant a copy of the written grant of immunity and order to testify, told him to read it carefully and then left him alone in the room so that he could consult with his lawyer by telephone. After "quite a long time," appellant informed Capt. Humphrey that he had consulted with his lawyer and asked if he could have a few minutes alone, and Capt. Humphrey agreed. After a 5–10 minute break, she met again with him and asked if he understood the grant of immunity. While he said he did, she explained what immunity meant and informed appellant that he could be prosecuted for perjury if he lied.

Capt. Humphrey then proceeded to interview appellant, who described two specific instances in which he had used marijuana with TSgt Stuart, one in March 1990 and a second at the end of May or beginning of June 1990. Appellant said that in both instances he and TSgt Stuart smoked the marijuana while riding off-base in TSgt Stuart's car. At Capt. Humphrey's request, Capt. Hamstra–Havermann of the base legal office witnessed the interview. At the end of the interview, appellant asked Capt. Humphrey what was going to happen to him, and she responded that she could not "make any promises."

The investigation under Article 32, UCMJ, 10 USC § 832, into the charges against TSgt Stuart convened on August 3, with Capt. Humphrey as the government representative. Contrary to his oral, unsworn statement on the previous day, appellant testified under oath at the Article 32 investigation that he had never used marijuana with TSgt Stuart.

The formal charges against appellant were not preferred until August 16, 1990. On that date appellant was charged with use of marijuana, apparently on the basis of Mrs. Stuart's statement to Capt. Humphrey that she had used marijuana with appellant on one occasion.[1] The perjury charge was

---

1. Judge Crawford correctly observes in her dissent (39 MJ at 251) that appellant was not charged with using marijuana with TSgt Stuart

based on appellant's testimony at TSgt Stuart's Article 32 investigation, in which he denied ever using marijuana with TSgt Stuart.

At a conference pursuant to RCM 802, Manual for Courts–Martial, United States, 1984, on the day before appellant's court-martial convened, defense counsel presented the military judge with a motion to dismiss Charge I and its specification (use of marijuana), based on the Government's improper use of immunized testimony, and citing *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). In his written motion to dismiss, defense counsel's offer of proof included the following assertions:

> Prior to the accused's testimony at the Article 32 in the Stuart case, *a decision to prosecute the accused had not been made.* No evidence was cataloged or sealed in preparation for the accused's prosecution prior to his immunized statements. Capt. Humphries [sic] did not make any notes, nor a memo of record of her interview with Deidre Stuart. Miss Regina Taylor [a potential witness to appellant's use of marijuana with Mrs. Stuart] had not been located and contacted by the Government until after the accused's immunized statements. . . .

(Emphasis added.)

When the court-martial convened, the military judge announced that he "would reserve ruling on the motion" to dismiss until after presentation of the prosecution case on the merits.

During the trial on the merits, Capt. Humphrey testified that she "didn't catalog any evidence or certify any evidence in preparation for the prosecution of" appellant. Mrs. Stuart's oral statement to Capt. Humphrey was not reduced to writing prior to her testimony at the Article 32 investigation. When appellant's defense counsel asked Capt. Humphrey if, prior to the Article 32 investigation in TSgt Stuart's case, there had been a decision whether to prosecute appellant, she responded, "I guess, I don't understand your question." No other evidence regarding the timing of the decision to prosecute appellant was presented by either side. Appellant's offer of proof in support of his motion to dismiss was unchallenged by the prosecution.

Mrs. Stuart testified that appellant used marijuana with her and another woman on one occasion in August or September 1989. She also testified that, on another occasion, she came to her house, smelled marijuana smoke, and saw the remains of a marijuana cigarette. TSgt Stuart was in the house with appellant at the time. When Mrs. Stuart asked, " 'Where is mine?,' " TSgt Stuart said, "[T]hat's all we had." Mrs. Stuart did not actually see either appellant or TSgt Stuart smoking marijuana.

At the close of the prosecution case, defense counsel renewed the motion to dismiss Charge I and its specification, specifically arguing that prosecutorial misuse of immunized testimony "could include assistance in focusing the investigation, *deciding to prosecute,* refusing to plea bargain, interpreting the evidence, planning cross-examination, and planning trial strategy." (Emphasis added.) This language was taken almost verbatim from *United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir.1973).[2]

The military judge denied the motion, finding "that the sole evidence" of appellant's use of marijuana was the testimony of Mrs. Stuart, who had provided evidence of appellant's marijuana use "well before the issuance of the grant of immunity."[3] Al-

---

in 1990, but with using marijuana with Mrs. Stuart in 1989.

2. Judge Crawford correctly observes that defense counsel's initial oral presentation of the motion to dismiss prior to trial on the merits focused on evidentiary use. 39 MJ at 252. On the other hand, the written motion (Appellate Exhibit II) and defense counsel's argument on the motion after both sides had rested specifically asserted that "prosecutorily [sic] use" includes "deciding

to prosecute." Furthermore, we think it significant that defense counsel crafted his motion as a motion to dismiss, directed toward terminating prosecution, rather than as a motion to suppress evidence.

3. Judge Crawford correctly observes that the military judge's ruling on the motion to dismiss addressed evidentiary use. 39 MJ at 254. The fact that the military judge did not address the basis upon which the motion should have been

though the issue was squarely raised by defense counsel, neither the military judge nor the Court of Military Review ruled specifically on the failure of the Government to show that the decision to prosecute was unaffected by appellant's immunized testimony at the Article 32 investigation.

*Use of Immunized Testimony (Issue I)*

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that prosecutorial authorities are prohibited from using testimony which is compelled by grants of immunity. In *United States v. Kimble,* 33 MJ 284 (1991), this Court held that immunity protection extends to nonevidentiary uses of immunized statements such as the decision to initiate prosecution. *Id.* at 291. In such cases, prosecution may only proceed "if the Government shows, by a preponderance of the evidence, that the ... decision to prosecute was untainted by" the immunized witness' testimony. *See Cunningham v. Gilevich,* 36 MJ 94, 102 (CMA 1992); *United States v. North,* 910 F.2d 843, 856–60 (D.C.Cir.) (discussion of nonevidentiary use of immunized testimony), *modified in part,* 920 F.2d 940 (1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *see also United States v. Harris,* 973 F.2d 333, 336 (4th Cir.1992) (Government may not alter investigative strategy as result of immunized statement).

■ We recognize that the federal circuits are divided on the question "whether *Kastigar* permits ... 'nonevidentiary use of immunized testimony.'" *See United States v. Harris,* 973 F.2d at 337 n. 2; *United States v. North,* 910 F.2d at 856–60. Nevertheless, after *Cunningham* and *Kimble,* military law is clear: the Government may not prosecute unless it can show, by a preponderance of the evidence, that the prosecutorial decision was untainted by the immunized testimony.

The record in appellant's case is devoid of any evidence that there was a decision to prosecute appellant before his compelled and allegedly perjured testimony on August 3. The Government concedes that "[i]t is unclear from the record when the decision to prosecute appellant was made." Answer to Final Brief at 3. Had the Government decided to prosecute appellant prior to his immunized testimony, it would be obvious that the prosecutorial decision was independent of his testimony.

■ Because the Government was unable to show that the prosecutorial decision was made before the immunized testimony, it had the burden of showing by a preponderance of the evidence that the prosecutorial decision was untainted by the immunized testimony. *Compare United States v. Kimble, supra* (decision to prosecute based on additional evidence disclosed by accused in immunized statement), *with Samples v. Vest,* 38 MJ 482, 489 (CMA 1994) (Gierke, J., concurring in the result) (decision to prosecute based on independent testimony of witness discovered 4 days after accused's immunized statement). Accordingly, appellant's conviction of wrongful use of marijuana cannot stand unless the Government established, by a preponderance of the evidence, that the decision to prosecute appellant was independent of his compelled testimony at the *Stuart* Article 32 investigation. *Cunningham v. Gilevich* and *United States v. Kimble,* both *supra.*[4]

In this case the issue was squarely raised by defense counsel. The Government introduced evidence that Mrs. Stuart's testimony against appellant was obtained prior to and independent of appellant's compelled testimo-

granted may explain but does not diminish the error. The ground of non-evidentiary use was clearly raised, and the military judge denied the motion.

4. In her dissent Judge Crawford notes our decision in *Cunningham v. Gilevich,* 36 MJ 94 (CMA 1992), but asserts that "we have not adopted requirements such as ... requiring the Govern-

ment to establish the lack of any 'non-evidentiary' uses." 39 MJ at 256. In *Cunningham* we said: "We will permit prosecution to proceed only if the Government shows, by a preponderance of the evidence, that the evidence against petitioners is untainted by their testimony before [administrative] boards *and, further, that the decision to prosecute was untainted by their testimony.*" 36 MJ at 102 (emphasis added).

ny, but they failed to show that the decision to prosecute was untainted by appellant's compelled testimony at the Stuart Article 32 hearing. In fact, all the evidence indicates the contrary: appellant was prosecuted because of what he said at the Article 32 hearing.

In *Cunningham v. Gilevich, supra,* we remanded the case to the convening authority and authorized a *Kastigar* hearing on the specific issue whether the decision to prosecute was tainted by compelled testimony. In appellant's case, the military judge has already held the required trial-level *Kastigar* hearing. The issue of a tainted prosecutorial decision was squarely raised by defense counsel, but the Government did not carry its burden of proof. *See United States v. Kimble,* 33 MJ at 291 (Government did not demonstrate that decision to prosecute was not based on compelled testimony); *United States v. Poindexter,* 951 F.2d 369, 375 (DC Cir.1991) (Remand for further hearing "would be pointless" where Government "neither met [its] burden of proof nor indicated that there might be any additional evidence ... to meet that burden."), *cert. denied,* — U.S. —, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). Accordingly, we must reverse the decision below as to appellant's conviction of Charge I and its specification.[5]

### *Proof of Perjury (Issue II)*

■ The perjury charge (Charge II and its specification) presents a separate issue. A grant of testimonial "immunity does not protect a witness" from a subsequent charge of perjury. *United States v. Villines,* 13 MJ 46, 54 (CMA 1982) (opinion of Fletcher, J.). Furthermore, the Supreme Court has held that using an immunized witness' truthful testimony to prove that later immunized testimony was false does not violate the federal immunity statute, 18 USC § 6002. *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). RCM 704(b) is based on 18 USC § 6002. Drafters' Analysis of RCM 704, Manual, *supra* at A21–34. Ac-

cordingly, we conclude that it was permissible to use appellant's compelled oral statement of August 2 and his compelled testimony at the Article 32 investigation in his subsequent prosecution for perjury.

■ The specific testimony alleged to be false was appellant's testimony that "he had never used marijuana with Technical Sergeant Terry D. Stuart." The Government's evidence consisted of three witnesses. Captains Humphrey and Hamstra–Havermann testified to appellant's inconsistent oral statement on the day preceding his allegedly perjured testimony. Mrs. Stuart testified that on one occasion she smelled marijuana smoke in her apartment; that both appellant and TSgt Stuart were present; and that when she asked for some marijuana, TSgt Stuart responded, "[T]hat's all we had." Appellant contends that this evidence was legally insufficient to prove perjury. We agree.

Perjury is different from other crimes which can be proved wholly by circumstantial evidence, in that "[t]he falsity of the allegedly perjured statement cannot be proved by circumstantial evidence alone, except with respect to matters which by their nature are not susceptible of direct proof." Para. 57c(2)(c), Part IV, Manual, *supra.* The subject matter of appellant's testimony did not concern matters such as intent or predisposition, "which by their nature are not susceptible of direct proof."

Furthermore, proof of perjury is subject to the "two-witness" rule, which provides that "[t]he falsity of the statement cannot be proved by the testimony of a single witness unless that testimony *directly* contradicts the statement and is corroborated by other evidence, either direct or circumstantial, tending to prove the falsity of the statement." *Id.* (emphasis added). As Judge Ferguson explained in *United States v. Guerra,* 13 USCMA 463, 466–67, 32 CMR 463, 466–67, 1963 WL 4583 (1963):

> Nor will circumstantial evidence alone suffice to prove that the allegedly perjurious testimony was false. There must be at

<hr/>

5. Our decision does not disturb the military judge's ruling with respect to evidentiary use of the immunized testimony. Our decision turns on the non-evidentiary use, which was expressly raised by defense counsel's motion but not expressly ruled on by the military judge.

least one witness who "must testify of his own knowledge that defendant's sworn statement was false."

\* \* \*

[T]he testimony of the one witness, aside from being corroborated, must directly contradict the accused's statement. It is not sufficient if the falsity must be inferred from his testimony. . . .

(Citations omitted.)

Appellant argues that the Government's evidence fell short of the foregoing standard of proof. The Government argues that the "two-witness" rule was satisfied in this case by the testimony of Captains Humphrey and Hamstra–Havermann, and further corroborated by the testimony of Mrs. Stuart. The government argument, however, overlooks that portion of the rule which requires direct, not circumstantial, evidence of perjury in order to sustain a conviction.

There was no direct evidence of perjury in this case. No one testified directly that appellant used marijuana with TSgt Stuart. The testimony of Captains Humphrey and Hamstra–Havermann is circumstantial evidence that one of the two statements made by appellant is false, but neither officer could testify of her own knowledge which of appellant's statements was false. Likewise, the testimony of Mrs. Stuart is circumstantial evidence that either appellant or TSgt Stuart, or both of them, were smoking marijuana when she entered the apartment; but she was unable to testify directly of her own knowledge that appellant smoked marijuana with her husband. We hold that the absence of direct evidence of the falsity of appellant's testimony is fatal to appellant's conviction of perjury.

### Decision

The decision of the United States Air Force Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The charges and specifications are dismissed.

Chief Judge SULLIVAN and Judges COX and WISS concur.

CRAWFORD, Judge (dissenting):

I am deeply concerned about the factual and legal basis for the majority's opinion and, therefore, must respectfully dissent.

Appellant's testimony as to use of marijuana with Technical Sergeant (TSgt) Stuart between May and June *1990* has no relationship to appellant's charge for use of marijuana in *1989*. The majority seems to hold that the probabilities are that appellant never would have been tried for marijuana use in 1989 except for his perjury in August *1990*. The crux of the majority opinion is that appellant can only be prosecuted for perjury, thus granting transactional immunity for an offense unrelated to his testimonial immunity. The majority fails to allow the Government to establish at a post-trial hearing under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), or at a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), an independent source for a second prosecution with new prosecutors and blurs the distinction drawn between direct and circumstantial evidence.

### FACTS

The first Article 39(a) session of this trial was held on September 14, 1990. Trial counsel was Major Carl A. Kaszuba and assistant trial counsel was Captain Laura E. Carlan. Defense counsel was Capt. John E. Schraft. At that session defense counsel moved to dismiss Charge I and its specification, and to disqualify Major Kaszuba and Capt. Carlan. His written motion states as follows:

The accused also admitted to using marijuana on two occasions [March and May–June 1990] with TSgt Terry Stuart. Prior to the accused's immunized statements, the Government had no evidence linking the accused to marijuana use with TSgt Stuart. Deidre Stuart testified at the Article 32 [, UCMJ, 10 USC § 832 investigation] she did not witness the accused and TSgt Stuart use marijuana. The above uses fall within the time period alleged in Charge I and its specification. Charge I and its specification were later amended by deleting the words "divers occasions."

This change was accomplished by the trial counsel, Major Walmsley, since the Government did not have any independent evidence of the accused's use with TSgt Stuart other than the accused's admissions. The only evidence left to support Charge I and its specification is Deidre Stuart's and Regina Taylor's testimony. Prior to the accused's testimony at the Article 32 in the Stuart case, a decision to prosecute the accused had not been made.

We do not know when the specification was amended from 1990 to 1989. But the "two occasions with TSgt Terry Stuart" were in March and May–June 1990. At a pretrial conference pursuant to RCM 802, Manual for Courts–Martial, United States, 1984, a decision was made to litigate the motion to dismiss Charge I and its specification as the case was tried on the merits before the military judge alone.

Therefore, defense counsel moved to dismiss Charge I and its specification because the *"evidence on the Charge"* was based on the "contact with th[e] immunized statements." (Emphasis added.) Defense counsel continued, "So, the Government's assertion that they are not going to offer any of that evidence on Charge I and its Specification is just a misrepresentation, that's not the cru[x] of the case law." This was followed by the cite to *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973). The defense then suggested that the

> Government ... remove the statement of the witness, Captain Hamstra–Havermann, out of the trial counsel folder and that it be sealed with no reference to those statements. That the assistant trial counsel and the trial counsel presently recuse themselves from the case, and not have contact with the new trial counsel. That somebody from the Fifth Circuit be appointed to try this case, and that all witnesses ... be ordered not to disclose, if they know, the substance of my client's statements, with respect to the use of marijuana. . . .

Pursuant to the defense request, the military judge granted "the motion to disqualify trial counsel and assistant trial counsel" and

separate the evidence. The judge went on to direct that new counsel be made available, stating:

> The court directs that circuit trial counsel be made available to prosecute this case. The court further directs that the convening authority and the Staff Judge Advocate take the appropriate steps to ensure that these evidentiary materials are appropriately separated, so as not to impede the prosecution of both of these charges, but to ensure that appropriate materials are separated to ensure that the new trial counsel will not be tainted.
>
> As I said, I recognize I'm being overly cautious, but I see no reason to needlessly build an issue into a case with charges this serious, and take a chance on having to come back and do it over again, when it can be easily rectified to ensure that the case can be tried on the merits and on the merits alone.

On September 24, 1990, the court was reconvened with Major Steven A. Gabrial as trial counsel; the original trial counsel and assistant trial counsel were no longer present. The original trial counsel and assistant trial counsel were from March Air Force Base, California, whereas Major Gabrial was from Nellis Air Force Base, Nevada.

> The judge stated to the defense:
>
> I believe that you have one additional motion. Did you not?
>
> DC: That's correct, Your Honor. I would simply cite *U.S. versus Lukas* for the Government to meet its heavy burden to show that the evidence was not derivative evidence of anything that they may have gotten from Staff Sergeant Olivero in the interview of Staff Sergeant Olivero.
>
> MJ: Yes, I believe you had a written motion on that to dismiss Charge I and its specification?
>
> DC: Yes, that's correct, Your Honor, but most of the facts that [are] in [the] offer of proof are facts that were for the disqualification, and I have not provided a copy of that to Major Gabrial, simply because there are things in there that would possibly disqualify Major Gabrial if he were to read those statements. I have advised him

of what the case law was that I was citing and the substance of my motion. I believe from our discussion that he is prepared to meet that.

MJ: What I would prefer to do then is treat that as a motion to dismiss upon the basis as you indicated. I will just take that under advisement and I can rule on it at the conclusion of the Government's case, to determine whether they have met their heavy burden of showing that *none of the evidence is derivative* of the accused's statements that he may have made while under a grant of immunity.

DC: *I agree and I understand,* Your Honor.

(Emphasis added.)

The evidence on the second motion is as follows. After appellant left Capt. Humphrey's office he was interviewed by Stuart's defense counsel, Capt. Roth and Capt. Thompson. At this time appellant admitted he used marijuana with TSgt Stuart. However, evidence was introduced by Capt. Humphrey that, at the Article 32 investigation on August 3, 1990, the accused testified under oath he never used marijuana with TSgt Stuart. The Government's next witness was Mrs. Diedre Stuart, the wife of TSgt Stuart. Mrs. Stuart met with Capt. Humphrey in June 1990. She testified she used marijuana extensively and in particular she used marijuana with appellant around September 1989. On another occasion she found her husband, TSgt Stuart, and appellant in her house.

Capt. J. LuAnn Humphrey testified she interviewed Mrs. Stuart in June 1990. Mrs. Stuart indicated she "used marijuana with Sergeant Olivero in the past." It was after this statement that a grant of immunity was requested for appellant. After the grant of testimonial immunity on August 1, 1990, appellant was interviewed the next day. This interview was coordinated with appellant's defense counsel. When Capt. Humphrey handed the grant to appellant, he asked for a break. After a 5 to 10 minute break, appellant came back into the office and was interviewed by Captains Humphrey and Hamstra–Havermann. Appellant admitted at that time he had "had enough time to consult" with his defense counsel and understood the letter of immunity. Even so, Capt. Humphrey explained not only the letter of immunity, but also "that in case he lied to me, he would be prosecuted for perjury." Appellant then indicated he used marijuana two times with TSgt Stuart. The first time was in March 1990. Both Stuart and appellant obtained a marijuana cigarette from appellant's civilian buddy. They smoked the cigarette. Appellant also admitted that at the end of May or the beginning of June 1990 he received a marijuana cigarette from the same civilian and smoked it with TSgt Stuart. However, at the Article 32 investigation appellant denied using marijuana with TSgt Stuart.

These statements and questions and ultimately the testimony derived therefrom related to marijuana use in *1990.* Appellant was charged with using marijuana in *1989.* Hence, no immunity was offered regarding the charged offenses. These dates were emphasized at trial in the following exchange:

MJ: Before you call your next witness, I have a question with regards to the charge sheet.

Prior to trial, pen and ink change[s] were made to amending the dates with regard to the specification of Charge I. I'm wondering if that was a typographical error. It sets forth now the dates to be "July 1989 until on or about 30 September 1989" are those—

TC: That's what I have, Your Honor.

DC: That's what I have, Your Honor.

MJ: Okay. I picked up on that after hearing the testimony of Captain Humphrey. If you recall, she testified to alleged uses of marijuana both, as she asserted, occurred in the year 1990.

TC: Yes, sir, but our understanding is that we can't use that marijuana use because that was given under a grant of immunity. We are only limited to using that to prove his perjury charge.

MJ: Okay. I just wanted to verify that.

The defense apparently agreed by its silence.

Concerning the charged offenses, Mrs. Stuart testified that she was a neighbor of appellant's and had moved into the Arnold

Heights area in February 1989. Mrs. Stuart testified that she and appellant used marijuana at Regina Taylor's home at 21926 Lee Avenue "sometime after" July 14, 1989, although she was not sure of the exact date. It could have been August or September 1989.

After the prosecution rested, the defense moved to dismiss Charge I and its specification on the basis that the Government had used evidence for information derived from the immunized statements of the accused. The defense agreed that they were arguing that the Government used information or evidence derived from appellant's immunized testimony. The judge ruled that the sole evidence before the court was the testimony of Mrs. Diedre Stuart, stating:

> The court simply concludes that the sole evidence before this court of use of marijuana by the accused is the testimony of Mrs. Diedre Stuart.

> The court further finds that this evidence was provided by Mrs. Stuart to the Government, specifically, Captain Humphrey, well before the issuance of the grant of immunity to the accused in this case. Of course, that grant of immunity, as both sides knows [sic], was signed by the convening authority on the 1st of August 1990 [and] [a]ctually, physically presented to the accused on the 2nd of August 1990.

> Accordingly, the court concludes that the Government has met its heavy burden in this regard.

> And the motion to dismiss Charge I and its specification is denied.

## DISCUSSION

### A. Specificity of Motion

RCM 905 provides:

**Motions generally**

(a) *Definitions and form.* A motion is an application to the military judge for particular relief. Motions may be oral or, at the discretion of the military judge, written. A motion shall state the grounds upon which it is made and shall set forth the ruling or relief sought. The substance of a motion, not its form or designation, shall control.

The cites to *McDaniel* in argument and the statement that "I have also cited to you case law ... that the prosecutorily [sic] use of testimony could include assistance in focusing the investigation, deciding to prosecute ...." etc., read in context, seem to be an argument by the defense that, if *McDaniel* would go that far, *a fortiori* the judge should find the use of derivative evidence in this case.

In any event the burden to make a motion specific is upon the moving party. *Cf.* Mil. R.Evid. 103(a)(1), Manual, *supra.*

### B. General

*Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), does not protect an individual against the non-evidentiary use of immunized testimony. In *Kastigar* the Supreme Court upheld the constitutionality of the present federal immunity statute, 18 USC §§ 6002–6003. Kastigar was held in contempt for refusing to testify before a Federal grand jury. He appealed this contempt finding and asked the Supreme Court to hold that Congress lacked the power to order such testimony unless the defendant had been granted transactional immunity. 406 U.S. at 449, 92 S.Ct. at 1658. The Court rejected the defendant's argument that the Fifth Amendment grants an absolute right to silence. 406 U.S. at 448, 92 S.Ct. at 1658. It also rejected his argument that the statute infringed upon his Fifth Amendment right because it did not grant transactional immunity. The Court held "that immunity from the use of compelled testimony and evidence derived therefrom is coextensive with the scope of the [Fifth Amendment] privilege." *Id.* at 452–53, 92 S.Ct. at 1661. In reaching this conclusion the Court declared, "The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted." *Id.* at 453, 92 S.Ct. at 1661. The Court indicated that contrary language in other opinions was dicta. *Id.* at 454–55, 92 S.Ct. at 1661–62. The Fifth Amendment privilege protects the witness from being compelled to give testimony leading to criminal prosecution. *Id.* at

453, 92 S.Ct. at 1661, quoting *Ullmann v. United States,* 350 U.S. 422, 438–39, 76 S.Ct. 497, 506, 100 L.Ed. 511 (1956). To overcome the privilege, the prosecution need only show testimonial immunity and not transactional immunity. *Id.* The Court noted, "Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection." *Id.*

### C. Independent Source and Inevitable Discovery

In *Kastigar* the Court expressly recognized that an individual granted immunity may be prosecuted for the immunized offenses provided the evidence used is derived "from legitimate independent sources." 406 U.S. at 461, 92 S.Ct. at 1665.

Included within the independent-source doctrine are several theories of admissibility, *i.e.,* the inevitable-discovery theory and the independent-evidence theory. *See Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). These theories of admissibility apply to coerced confessions under the Fifth Amendment. Indeed both types of evidence, coerced confessions and compelled testimony, are protected by the Fifth Amendment's sanction against compulsory self-incrimination.

When the Government decides to prosecute a previously immunized witness, the judge should hold an Article 39(a) hearing to determine whether there is an independent source for the charges or whether the evidence for the charges would have inevitably been discovered. *See United States v. Harris,* 973 F.2d, 333, 336 (4th Cir.1992). After such a hearing, if the case is immediately appealed as in *Cunningham v. Gilevich,* 36 MJ 94 (CMA 1992), the Court may examine the independent source for prosecution. However, if the hearing results in a denial of the motion and the trial continues through findings, the issue on appeal may vary. If the case arrives on an appeal and inevitable discovery or an independent source has not been established, the case should be returned for a *DuBay* hearing to determine whether the Government can meet its heavy burden. At the appellate level, when the case has already been heard, if the Government carries its heavy burden of demonstrating inevitable discovery or an independent source for the evidence introduced at trial, this severs any taint based upon the charges or pretrial investigation. To hold otherwise would put the Government in a worse position than they would have been had they coerced the evidence from the witness. None of these alternatives are discussed by the majority.

Even if the Government could not meet its burden at a *DuBay* hearing, this would not preclude the Government from retrying appellant if it could show at a retrial that the evidence would have been inevitably discovered or that there was an independent source. An independent source may be established by requiring the withdrawal of previous prosecutors or governmental officials exposed to the immunized testimony and forbidding those individuals from talking to new prosecutors appointed to handle the case. *See* 973 F.2d at 337. This is precisely what happened in this case. Further, once the new prosecutor obtained the pretrial ruling, he or she may have thought there was no need to introduce additional evidence. We should not assume that the prosecutor introduced all the evidence in the possession of the Government. It is pure conjecture on our part to presume that another new set of prosecutors could not establish inevitable discovery or an independent basis for the evidence at a retrial.

### D. Non-evidentiary Use of Immunized Testimony

There is a split in the Federal circuits as to whether testimonial immunity prohibits the non-evidentiary use of immunized testimony to indict. *Compare United States v. McDaniel,* 482 F.2d at 311, *with United States v. Serrano,* 870 F.2d 1, 17 (1st Cir. 1989) (*Kastigar* does not protect against non-evidentiary use of immunized testimony; the contrary rule "amounts to a per se rule that would in effect grant a defendant *transactional* immunity once it is shown" that the prosecutors, investigators or witnesses "were exposed to" it); *United States v. Byrd,* 765 F.2d 1524, 1530–31 (11th Cir.1985) (*Kastigar* does not prohibit non-evidentiary uses such as the decision to indict). Hence, the related

question of whether testimonial immunity prohibits the non-evidentiary use of immunized testimony to charge is not clear cut. In my opinion, the *North* and *Poindexter* cases, cited by the majority, 39 MJ at 249 & 250, have a very limited holding that the prosecution witnesses were impermissibly refreshed based upon the televised Iran–Contra hearings. *North* expressly did not reach the issue in this particular case. As the court there stated, "We do not reach the precise question, therefore, of the permissible quantum of nonevidentiary use by prosecutors, or indeed whether such use is permissible at all." 910 F.2d 843, 860 (D.C.Cir.1990).

We need not decide whether the prosecution must show no "non-evidentiary" use of the immunized testimony. In *United States v. McDaniel*, 482 F.2d at 311, "non-evidentiary" use was defined as including "assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea-bargain, interpreting evidence, planning cross-examination, and otherwise generally planning trial strategy." It would be inappropriate for this Court to require the Government to show no non-evidentiary use of immunized testimony. *Cf. United States v. Smith*, 580 F.Supp. 1418 (D.N.J.1984). The majority indicated in *Cunningham v. Gilevich*, 36 MJ 94, 102 (CMA 1992):

> We will permit prosecution to proceed only if the Government shows, by a preponderance of the evidence, that the evidence against petitioners is untainted by their testimony before [administrative] boards and, further, that the decision to prosecute was untainted by their testimony. *Kastigar v. United States*, 406 U.S. 441, 460–61, 92 S.Ct. 1653, 1664–65, 32 L.Ed.2d 212 (1972).

*Kastigar* does not go that far. In fact, the pages cited in *Cunningham* do not support its holding as to a decision to prosecute. Indeed, those pages would indicate the opposite. The *Kastigar* Court stated that the burden is on the prosecution "to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460, 92 S.Ct. at 1665. It continues, "[T]he statute and the Fifth Amendment allow the

government to prosecute using evidence from legitimate independent sources." *Id.* at 461, 92 S.Ct. at 1665. The Fifth Amendment bars introduction of the evidence; "it does not bar prosecution." *Id.* As to the burden, Justice Powell stated:

> One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.

*Id.* at 461–62, 92 S.Ct. at 1665–66. I point out these quotes to limit *Cunningham* to the facts, that is, an appeal based on a military judge's ruling, rather than the scenario presented in this case.

In any event, we have not adopted requirements such as requiring a new prosecutor, *cf. State v. Munoz*, 103 N.M. 40, 44, 702 P.2d 985, 989 (1985), or requiring the Government to establish the lack of any "non-evidentiary" uses.

Again, what will be required to establish an independent source depends on *where* and *when* the issue is raised and the prior rulings. If this was a coerced confession and the motion to dismiss the charges because of the coerced confession was made after the military judge's ruling, then *Cunningham* would apply. But there is a different procedural posture when the motion to dismiss the charges because of the coerced confession is denied and trial continues through to findings and sentence. To impose a requirement on the Government to show no "non-evidentiary" uses would in effect be to grant transactional immunity. *Cf.* RCM 907(b)(2)(D)(ii). The courts establishing this requirement probably have done so in part because of the limited discovery in the federal and state courts.

The military has broad discovery rules, including notice of prosecution witnesses, RCM 701(a)(3), and prior reports, RCM 701(a)(2)(B); duty to discover and disclose investigative reports in the custody of military law enforcement officers, *United States v. Simmons*, 38 MJ 376 (CMA 1993); disclo-

sure of all defendant's statements, oral or written, whether or not such will be introduced, Mil.R.Evid. 304(d)(1); disclosure of evidence seized from defendant that the Government intends to offer, Mil.R.Evid. 311(d)(1); and notice of all prior identifications of the defendant at a lineup or other identification process the prosecution intends to offer, Mil.R.Evid. 321(c)(1).

In *Kastigar* the Court recognized that the immunity must be co-extensive with the Fifth Amendment and the statutory equivalent, such as Article 31, UCMJ, 10 USC § 831. When statements are coerced or compelled the prosecution must show an independent basis for the evidence in order to use the evidence or harmless error. One might examine Fourth, Fifth, and Sixth Amendment cases to determine what factors might be employed in establishing an independent basis. The Supreme Court indicated in *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that even where there is a coerced confession, automatic reversal is not required but only a determination of whether the error was harmless. *Id.* at 306–12, 111 S.Ct. at 1262–66.

Here there is a factual and legal independent source for the evidence supporting appellant's wrongful use of marijuana. The evidence obtained by Captains Humphrey and Hamstra–Havermann related to the use of marijuana in mid–1990. Appellant was charged with using marijuana in *1989*. Additionally, the judge required a separation of the evidence obtained by Captains Humphrey and Hamstra–Havermann and the appointment of a new prosecutor. This is totally different from *United States v. McDaniel*, 482 F.2d 305 (8th Cir.1973), cited by the majority. There the prosecutor misunderstood North Dakota law and read three transcript volumes of McDaniel's immunized testimony. *Id.* at 307. It would be hard to obliterate this from the prosecutor's mind during the trial of the case. Here there was a segregation of the evidence and appointment of a new prosecutor. Appellant was convicted of wrongfully using marijuana in

*1989*, not *1990*. The sole evidence at trial was the evidence from Mrs. Diedre Stuart. This evidence was obtained in June 1990, more than 1 month before appellant talked to Captains Humphrey and Hamstra–Havermann. This is not an instance where the appellate court cannot accurately estimate the prosecutor's use of evidence at trial.

Based on the stringent standard established by the majority in this case, convening authorities and appellate courts should be very reluctant in approving defense-requested immunity because of the near impossibility of establishing an independent source. *Cf. United States v. Zayas*, 24 MJ 132 (CMA 1987). I fear the result of the majority's opinion, however unintended it may be, is effectively to prohibit prosecution for any crime other than perjury where there has been a grant of testimonial immunity. Thus, by judicial fiat rather than by the legislative process, this Court transforms a grant of testimonial immunity for one set of offenses into transactional immunity for an entirely separate and distinct offense.

E. *Direct Versus Circumstantial Evidence*

As to Issue II, Mrs. Stuart testified that she arrived home to find appellant and her husband together, with the smell of marijuana smoke in the air, and asked where hers was. Her husband responded, "[T]hat's all *we* had." (Emphasis added.) I disagree with the majority that the statement, in particular, was circumstantial evidence. Rather, I believe it reflects an attitude correlating to willing and mutual drug use. *Cf. Tyler v. Bethlehem Steel Corporation*, 958 F.2d 1176, 1184 (2d Cir.), citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 291, 109 S.Ct. 1775, 1812, 104 L.Ed.2d 268 (1989) (Kennedy, J., dissenting) ("Courts will also be required to make the often subtle and difficult distinction between 'direct' and 'indirect' or 'circumstantial' evidence[,]"), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); and *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir.1990) ("direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude

correlating to the discrimination or retaliation complained of by the employee"), disapproved *sub nom. St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2750, 125 L.Ed.2d 407 (1993). Certainly the Government relied on this assertion for the purpose it was made—to indicate willing and mutual drug use.

I would affirm the decision below.