UNITED STATES, Appellee,

v.

Brady J. YOUNGMAN, Airman
Basic, United States Air
Force, Appellant.

No. 97–0278.
Crim.App. No. 32055.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1997.

Decided June 1, 1998.

For Appellant: *Captain Tishlyn Taylor* (argued); *Lieutenant Colonel Kim L. Sheffield* (on brief); *Captain Marge A. Overly.*

For Appellee: *Captain Steven D. Dubriske* (argued); *Colonel Brenda J. Hollis, Lieutenant Colonel William B. Smith,* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During October of 1995, appellant was tried by a general court-martial at Laughlin Air Force Base, Texas. Contrary to his pleas, he was found guilty of failing to go to his appointed place of duty (2 specifications) and disobedience of a lawful general regulation requiring the shaving of facial hair, in violation of Articles 86 and 92, Uniform Code of Military Justice, 10 USC §§ 886 and 892, respectively. The members sentenced him to a bad-conduct discharge, confinement for 65 days, and total forfeitures. On February 7, 1996, the convening authority approved the sentence as adjudged. The Court of Criminal Appeals, on October 25, 1996, affirmed in an unpublished opinion.

This Court, on June 20, 1997, granted review on the following issue:

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A NEW ARTICLE 32 INVESTIGATION WHERE APPELLANT'S OWN STATEMENTS MADE UNDER A GRANT OF IMMUNITY WERE PRESENTED, AND WITNESSES INFLUENCED BY THOSE STATEMENTS TESTIFIED.

We hold that the military judge legally erred in denying the defense motion for a new convening-authority-referral decision with respect to those charges not dismissed on immunity grounds. *See United States v. McGeeney,* 44 MJ 418, 422–23 (1996); *United States v. Olivero,* 39 MJ 246, 249–50 (CMA 1994)(immunized statements may play no role in the prosecutorial decision).

Appellant was arraigned on charges of wrongful possession of marijuana, wrongful use of marijuana, dereliction of duty (2 specifications), making two false statements concerning his purchase of marijuana from an Airman First Class (A1C) Bell, failure to go to his appointed place of duty (2 specifications), and failure to obey a lawful general regulation to shave his facial hair. Prior to trial, he made a motion to dismiss the two marijuana charges and the two false-statement charges as tainted by his previous immunized statements in A1C Bell's court-martial. The Government opposed the motion, and a hearing was held by the military judge to establish the factual basis for the motion. The judge ultimately granted the defense motion on the basis that the prosecution had not shown by a preponderance of the evidence that the decision to prosecute appellant for the challenged offenses and the evidence of his guilt were untainted by his previous immunized statements in A1C Bell's court-martial.

Appellant subsequently made a second motion to have a new Article 32 [1] investigation and a new convening-authority-referral decision on the remaining charges. Trial defense counsel stated:

DC: Yes, sir, we would, in light of the finding, we would move to have a new Article 32 investigation on the remaining charges due to the fact that the convening authority, when he referred the charges did so in light of the severity of the charges that were brought forward to him in the Article 32 Investigation. That severity being—we have originally charged

---

1. UCMJ, 10 USC § 832.

in a general court-martial the maximum of possibly 15 years, 2 months. And as a result of this motion being granted, that's now down to 3 months, 2 months, as the maximum penalty. And the convening authority, in his letter, in which he denies the Chapter 4 request states that because of the serious nature of the alleged misconduct, and the fully apparent threat it presents to good order and discipline, trial by court-martial is the most appropriate forum in which to dispose of this case. So, I would offer this in support of the motion for a new Article 32 due to the fact that the entire complexion of the case has changed. We now are reduced to two specifications of failure to go, two specifications (that arguably it should really be one for findings purposes) on a dereliction of duty on one day in the Bay Orderly Room, and then a specification for not having shaved in the morning, which is clearly less serious in nature than possession and use of a controlled substance and a false official statement and false swearing, the total of which carries a maximum of 12 years confinement and dishonorable discharge.

The military judge denied this motion and the Court of Criminal Appeals essentially adopted his decision. The judge said:

MJ: The Motion for a New Article 32 is DENIED. There is nothing that shows that the seriousness of the remaining offenses are anything that would not—that would preclude the convening authority from referring this to a court-martial, special or general. In fact, the remaining charges, the maximum punishment for the remaining charges would, in fact, exceed the statutory maximum for a special court-martial and the general court-martial convening authority has every right to refer these to a general court-martial. The Appellate Exhibit XVII simply states that he's denying the request for discharge because of the serious nature of the alleged misconduct and apparent threat it presents to good order and discipline. The remaining offenses of dereliction of duty, failing to go to the appointed place of duty, and violating a lawful general regulation cer-

tainly in their own right go to the—directly attack the preservation of good order and discipline and are, in a military organization, of a serious nature.

The record of trial shows the following uncontroverted testimony concerning the decision to prosecute appellant at a general court-martial:

Q. Major Combs, were you the Staff Judge Advocate from the time period beginning o[n] March 1995 until the present?

A. Yes.

Q. Were you involved with the case of Airman Basic Youngman?

A. Yes.

Q. Were you also the Staff Judge Advocate advising on the case of Airman Basic Bell?

A. Yes.

Q. When this case first came up, what was the decision as far as prosecuting Airman Youngman?

A. When the case first came up, and I might need some help on the dates, I don't have any notes, but I believe it was 27 April that Airman Youngman made a statement about a drug bust basically. And at that time, Airman Youngman indicated that several people, including himself, were smoking marijuana in the dorm room on several different occasions. Several people, three or four different times, as I recall. *There was no intention to court-martial, or no recommendation, at least, from me to court-martial Airman Youngman because he had incriminated himself only as to use of marijuana.*

Q. And Airman Bell, what was the decision about prosecuting him?

A. At that time, the recommendation was to court-martial him based on the fact that Airman Youngman indicated that there was distribution of marijuana on his part.

Q. On Airman Bell's part?

A. Yes.

Q. As the result of this decision, did you actually court-martial Airman Bell?

A. Yes, he was court-martialed.

Q. *After Airman Bell was court-martialed, did you intend to court-martial Airman Youngman?*

A. *Not immediately afterwards, no. That recommendation was formed later.*

Q. And what changed to change your recommendation?

A. There were a series of things after Airman Bell's court-martial that led to that. And there were some things that are probably going to require a little bit more explanation. *First, it should be stated that during Airman Bell's court-martial, information became known or it became apparent that Airman Bell may not have been the primary or the only supplier of the marijuana as we had earlier thought. Based on that and based on his testimony and things that he said that were expressed to us by his defense counsel, it appeared that Airman Youngman was at least as culpable as Bell, if not more so.* Based on that, we did look at the situation of, perhaps, had we gone after the wrong person, but we decided—or at least I decided not to recommend, at that point, a court-martial, because it didn't appear worth it at that point. Discharges were already being put together for all of the individuals including Airman Youngman, and we were just going to proceed with discharges. He had already been punished under Article 15 well before that and the discharge package had been started even though it had not been served. Should I go on or do you want to ask some questions?

Q. Go ahead, sir.

A. *And then sometime after that, I want to say that it was about 9 August, Airman Hargrave made a statement to OSI indicating that he and Airman Youngman and others had been smoking marijuana since he had been punished under Article 15 and perhaps even after Bell's court-martial. I don't recall that exactly.*

Q. From the time period that Airman Youngman received his Article 15 and the time that Airman Hargrave came forward, to your knowledge, what was Airman Basic Youngman's duty performance like?

A. As far as duty performance, I'm not sure. *But there were several incidents of him being late for work, of him watching TV while he was supposed to be performing bay orderly duties, of him sleeping while he was supposed to be doing bay orderly duties, and these things were being briefed to me either as they were occurring or sometimes as much as a week after they were occurring.* I was talking mostly with the first sergeant of the squadron, and he was asking me what could we do to him. *My reply was, well, this misconduct certainly isn't so serious as to warrant a court-martial, and he's already been punished under an Article 15 to Airman Basic, so that's probably not going to be very rehabilitative or helpful in nature, so I said I would just add it to his discharge package.* That was probably earlier on. And then, as they accumulated more, it got to the point where the—and I don't remember whose idea it was, but it was between the first sergeant and myself and probably other people in the office. We came up with the idea of putting all the charges, including previous charges, on a charge sheet, giving it to Airman Youngman, and saying, "This is what can happen to you if you don't straighten yourself out and quit engaging in this misconduct." That was never actually done. The first sergeant kept asking us for it and asking us for it, but other work—other "real" work if you will, kept us from doing that. We did actually, at one

point, prepare the dummy charge sheet, but it did not ever get "served" on Airman Youngman, *because by that time, I believe, Airman Hargrave had made his statement, and we decided to go ahead and prefer charges.*

Q. *So the main decision to court-martial Airman Youngman was the fact that Airman Hargrave made the statement that he had smoked or that Airman Youngman had smoked marijuana after his Article 15 punishment?*

A. *Yes.* Yes, I would say that's true. In fact, I would say that that—I was going to say that that's probably the only reason, but it was a combination. *But that was certainly the act or the information that finally led me to recommend that he be court-martialed rather than another disposition.*

(Emphasis added.)

———

Appellant asserts that the prosecutorial decision to refer to a general court-martial the charges for which he stands convicted violated the decisions of this Court on immunity. He notes that the military judge did dismiss several drug and false-statement charges which were directly established by his immunized statements or which were to be proven by witnesses implicated in those statements. He further notes, however, that 2 specifications of failing to go and 1 specification of failing to shave were not dismissed by the military judge on this basis. Appellant contends that these remaining charges would not have been referred to a trial at all, never mind a general court-martial, if considered by themselves. Therefore, he asks, as he did at trial, for a new pretrial investigation and convening authority referral decision.

▆▆▆ In *McGeeney,* 44 MJ at 422–23, this Court recently summarized military law with respect to the use of immunized statements. We said:

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that prosecutorial authorities may not use testimony com-

pelled by a grant of immunity. *We have construed "use" to include non-evidentiary use such as the decision to prosecute. See United States v. Olivero,* 39 MJ 246, 249 (CMA 1994), citing *United States v. Kimble,* 33 MJ 284 (CMA 1991). Other federal appellate courts have construed *Kastigar* to hold that the Government may not "alter its investigative strategy" based on immunized testimony. *See United States v. Harris,* 973 F.2d 333, 336 (4th Cir.1992). Finally, the Government may not use the testimony of a witness which was influenced by the immunized testimony. *United States v. North,* 910 F.2d 843, 860 (D.C.Cir.), *modified in part,* 920 F.2d 940, 942 (1990).

Under *Kastigar,* the Government has a "heavy burden" to show non-use of immunized testimony. 406 U.S. at 461, 92 S.Ct. at 1665. The Government must do more than negate the taint; it must affirmatively prove that its evidence "is derived from a legitimate source wholly independent of the compelled testimony." An appellant is "not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities." 406 U.S. at 460, 92 S.Ct. at 1665. *See United States v. Boyd,* 27 MJ 82, 85 (CMA 1988). *Prosecution may proceed only "if the Government shows, by a preponderance of the evidence, that the ... decision to prosecute was untainted by" immunized testimony. United States v. Olivero,* 39 MJ at 249, quoting *Cunningham v. Gilevich,* 36 MJ 94, 102 (CMA 1992); *see United States v. Harris,* 973 F.2d at 336.

Whether the Government has carried its burden to show, by a preponderance of the evidence, that prosecution is based on sources independent of immunized testimony is a preliminary question of fact. *United States v. Rivera,* 1 MJ 107, 110 (CMA 1975); *see* Mil.R.Evid. 104, Manual for Courts–Martial, United States (1995 ed.). *A military judge's finding that the decision to prosecute and that all prosecution evidence is independent of the immunized testimony should not be overturned on appeal unless it is clearly erroneous or*

*unsupported by the evidence. See Samples v. Vest,* 38 MJ 482, 487 (CMA 1994), citing S. Childress & M. Davis, 1 *Federal Standards of Review* §§ 201 at 2–6 and 2.02 at 2–7 to 2–9 (2d ed.1992).

(Emphasis added.)

■ The military judge and the Court of Criminal Appeals in this case overlooked these principles of law in ruling on appellant's motion for a new referral action. Without citing any authority, they concluded that the determinative question was whether the remaining charges authorized sufficient punishment in their own right to warrant the jurisdiction of a general court-martial. Our case law's concern, however, is whether the improperly considered immunized statements and evidence derived therefrom played "any role" in the decision to prosecute these offenses. *See United States v. Olivero, supra.* The military judge's use of incorrect legal principles in deciding appellant's motion constituted an abuse of discretion. *See generally United States v. Travers,* 25 MJ 61, 63 (CMA 1987).

■ We further hold that appellant was prejudiced by this error because the record established a strong basis for granting the requested relief under the correct legal standard. *See United States v. Ledbetter,* 2 MJ 37, 44 (CMA 1976)(new convening authority referral action ordered where prejudice established under correct standard). Here, the staff judge advocate (SJA) admitted that the July 27th failure to go (Charge II) was not serious enough to warrant trial by court-martial. The record also shows that the additional failure to go and facial-hair offenses in September 1995 were of the same type. Finally, the SJA admitted that the reason these relatively minor specifications were sent to a general court-martial was because appellant's drug confederates incriminated him in additional drug use after he incriminated them in his immunized statements. Clearly, appellant's immunized statements caused or played a substantial role in referral of the remaining offenses against him to a general court-martial. *See United States v. McGeeney, supra; see also United States v. Hinton,* 543 F.2d 1002, 1010 (2d Cir.1976)("as a matter of fundamental fairness, a Government practice of using the same grand jury that heard the immunized testimony of a witness to indict him after he testifies . . . cannot be countenanced").

■ Nevertheless, the Government seeks refuge in a rule of waiver and argues that appellant's failure to object at his pretrial investigation to a violation of his immunity agreement waived his immunity claim and related requests for a new pretrial investigation and referral. As authority for this waiver argument, the Government cites RCM 405(k), Manual for Courts–Martial, United States (1995 ed.), which states:

> *Waiver.* The accused may waive an investigation under this rule. In addition, failure to make a timely objection under this rule, including an objection to the report, shall constitute waiver of the objection. Relief from the waiver may be granted by the investigating officer, the commander who directed the investigation, the convening authority, or the military judge, as appropriate, for good cause shown.

The Government further asserts that appellant did not show "good cause" for making his belated immunity complaint to the military judge rather than to the pretrial investigating officer. *See* RCM 405(i) and Mil. R.Evid. 301(c), Manual, *supra.* We do not agree that RCM 405(k) extends to claims that a convening authority's referral decision was tainted by a prior grant of immunity.

■ On its face, RCM 405(k) is directed to waiver of objections to *the pretrial investigation and the pretrial investigation report* required by RCM 405(j). *Cf.* RCM 405(h)(2)(no waiver rule provided for failure to object during the proceeding itself). This rule does not purport to address waiver of objections to a convening authority referral decision subsequent to such an investigation or report. *See* RCM 905(b)(1). In addition, trial counsel did not make any waiver argument whatsoever to the judge; nor did the trial judge or the Court of Criminal Appeals decide this case on the basis of this waiver provision. Finally, the law of immunity, as it has been developed by this Court under the

Constitution and the UCMJ, does not require a pre-referral objection in order that the defense might later challenge a convening authority's tainted referral decision. *See United States v. McGeeney* and *United States v. Olivero,* both *supra.* Accordingly, we find no waiver with respect to appellant's claim of a tainted referral. *See also United States v. Huffman,* 40 MJ 225, 227 (CMA 1994) (failure to object to pretrial punishment prior to trial does not amount to waiver).

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force for submission to a new convening authority for further action consistent with this opinion.[2]

Chief Judge COX and Judges GIERKE and EFFRON concur.

CRAWFORD, Judge (dissenting):

I would affirm the decision below based on waiver and the non-evidentiary use of immunized testimony.

The granted issue is whether the judge erred in denying the defense motion for a new Article 32[1] investigation because the prosecution presented appellant's immunized testimony to the Article 32 investigating officer. In this case, one can consider appellant's offenses to fall into two categories. The first category relates to appellant's use of drugs[2] and the second relates to appellant's performance of military duties.[3] Simply stated, the defense contends that the convening authority would not have referred this case to a general court-martial but for the use of appellant's immunized testimony at the Article 32 hearing to investigate whether appellant committed the drug offenses.

Investigators initially believed appellant was a minor player in the drug scene. As a result, appellant was offered and accepted an Article 15[4] for his use of marijuana. Subsequently, appellant was granted testimonial immunity in order to testify against Airman First Class (A1C) Bell. Ten days after appellant received testimonial immunity, A1C Hargrave implicated appellant in use of marijuana in April of 1995. Later, another co-accused implicated appellant in the use of marijuana on April 8, 1995.

Appellant, in response to these new allegations of drug use, told an agent of the Office of Special Investigations that he and A1C Hargrave had used marijuana in March and April of 1995. When interviewed by assistant trial counsel, appellant admitted to use, possession, and distribution of marijuana between March and April 1995. Later, appellant told the assistant trial counsel that, contrary to his earlier statement, he did not buy marijuana from A1C Bell.

A1C Bell, knowing appellant had been granted immunity and would testify against him, pleaded guilty in accordance with a pretrial agreement that included a provision that A1C Bell testify against appellant. During A1C Bell's providence inquiry, he implicated appellant in possession of marijuana between March and April of 1995. In addition, A1C Hargrave, in exchange for an administrative discharge, agreed to testify that appellant had used marijuana after imposition of appellant's Article 15.

Both groups of offenses were then referred to an Article 32 investigation. No objection to use of appellant's immunized testimony was

---

2. We need not decide whether a new pretrial investigation must be ordered in this case. However, the Government retains the burden to ensure that any subsequent referral decision is also not tainted in any way by consideration of appellant's immunized statements or any evidence derived therefrom. *See Cunningham v. Gilevich,* 36 MJ 94, 102 (CMA 1992)(decretal paragraph).

1. UCMJ, 10 USC § 832.

2. Wrongful possession of marijuana between March 22 and April 25, 1995; use of marijuana

between May 9 and July 1, 1995; false official statement that he had paid Airman First Class Bell $15.00 for marijuana; and false statement under oath that he had paid Airman First Class Bell $15.00 for marijuana.

3. Dereliction of duty (2 specifications); failure to repair (2 specifications); and disobedience of a lawful general regulation by failure to shave his facial hair.

4. UCMJ, 10 USC § 815.

made either at the Article 32 hearing or to the convening authority. However, at trial, based on a defense motion, the judge dismissed all drug Charges and specifications against appellant.

RCM 405(j)(4) and (k), Manual for Courts-Martial, United States (1995 ed.), state that failure of defense counsel to make objections within 5 days of receipt of the Article 32 investigator's report constitutes waiver. If the defense had made a successful motion pursuant to RCM 405 to the convening authority to dismiss the drug charges and specifications instead of waiting until trial, and, if the convening authority nonetheless had referred appellant's military-duty-performance offenses to a general court-martial, there would be no issue. It is very likely that defense counsel made the tactical decision not to make such a motion because of the probability of just such a scenario. This is sandbagging at its worst, yet the majority is rewarding it.

Even setting aside the waiver issue, as I have previously noted in *United States v. Olivero,* 39 MJ 246, 255 (CMA 1994) (summarizing *United States v. Byrd,* 765 F.2d 1524, 1530–31 (11th Cir., 1985)), "*Kastigar* [*v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)] does not prohibit non-evidentiary uses such as the decision to indict." That is what happened in this case.

At the time of referral, the Government had evidence from at least two witnesses regarding appellant's drug possession and use that was not derived from appellant's immunized testimony. This evidence and the evidence relating to appellant's duty performance could have supported referral of all the charges, except the distribution-of-marijuana charge, to a general court-martial. The fact that the testimony of the witnesses came after appellant's grant of immunity does not make it derivative of the grant of immunity. If all of the evidence resulting in referral was based on immunized testimony, but none of the immunized testimony or truly derivative evidence was used at trial, I would hold that there was no violation of *Kastigar.* Thus, I dissent.