UNITED STATES, Appellee

v.

Kevin P. McGEENEY, Corporal U.S.
Marine Corps, Appellant.

No. 95–0733.
Crim.App. No. 93–0228.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 28, 1996.

Decided Sept. 5, 1996.

Certiorari Denied Jan. 6, 1997.

See 117 S.Ct. 692.

For Appellant: *Lieutenant Commander Howard B. Goodman*, JAGC, USN (argued).

For Appellee: *Lieutenant David M. Harrison*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC and *Commander David H. Myers*, JAGC, USN (on brief).

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members at Marine Corps Air Station, El Toro, Santa Ana, California, convicted appellant, contrary to his pleas, of making a false official statement and of making and uttering bad checks (13 specifications), in violation of Articles 107 and 123a, Uniform Code of Military Justice, 10 USC §§ 907 and 923a, respectively. The approved sentence provides for a dishonorable discharge, confinement for 5 years, total forfeitures, a $6000.00 fine,* and reduction to pay grade E–1. The Naval Clemency and Parole Board mitigated the dishonorable discharge to a bad-conduct discharge, remitted the fine, and remitted confinement in excess of 3 years. The Court of Criminal Appeals affirmed the findings and the approved sentence. 41 MJ 544, 552 (1994).

Our Court granted review of the following issue:

WHETHER THE GOVERNMENT MET ITS HEAVY BURDEN UNDER *KASTIGAR V. UNITED STATES*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), TO SHOW THAT IT MADE NO USE OF APPELLANT'S IMMUNIZED STATEMENTS.

The military judge and the court below decided that the Government met its burden. We agree.

*Facts*

Captain (Capt) John Prew was detailed in June 1991 to prosecute four co-accused allegedly involved in a bad-check scam: Lance Corporals (LCpl) Veronica Arbuckle, David Arbuckle, Brad Jepsen, and appellant. LCpl Veronica Arbuckle's court-martial began in September 1991, but the charges were withdrawn after the military judge suppressed evidence of her admissions to Naval Investigative Service (NIS) agents. Appellant's court-martial was scheduled for late November and LCpl David Arbuckle's for early December. The plan was to try appellant first, grant him testimonial immunity, and force him to testify against LCpl David Arbuckle, against whom the evidence was not so strong.

At the beginning of appellant's trial, the military judge granted a defense motion to reopen the Article 32, UCMJ, 10 USC § 832, investigation on the ground that appellant had been denied his right to representation by civilian counsel. This delay in appellant's trial forced the prosecution to try Arbuckle first. The prosecution was concerned about providing a speedy trial in Arbuckle's case and did not want to postpone his trial.

When appellant's motion to reopen the Article 32 investigation was granted, the NIS investigation was completed with respect to all four suspects, except for receiving some handwriting analysis reports and writing the final investigative report. SA Schmidt had begun the investigation, but he was reassigned in July 1990, before completing it. SA Brooke Ann Adamson completed the investigation. She testified that "all the leads were done" and that there was no further investigation.

---

* The convening authority disapproved that part of the sentence providing for additional confinement if the fine was not paid.

The convening authority was Major General (MajGen) Blot, Commanding General, 3d Marine Air Wing, stationed at Marine Corps Air Station, El Toro, California. He granted appellant testimonial immunity on November 26, 1991. On the weekend after Thanksgiving, Capt Prew interviewed appellant for about an hour. Appellant told Capt Prew that LCpls David and Veronica Arbuckle "were not involved" in the check-cashing scheme but that only he and LCpl Jepsen were involved. Capt Prew took "very cryptic notes" and showed them to no one. Capt Prew told Lieutenant Colonel (LtCol) Naugle, the aircraft wing staff judge advocate, and Major (Maj) Walker, the deputy director of the Joint Law Center, what appellant had said. Colonel (Col) Lucas, the staff judge advocate, Marine Corps Air Station, El Toro, was also present. Col Lucas, the senior judge advocate assigned to the air station, was the Director, Joint Law Center. He suggested that LCpl Jepsen be confronted with what appellant had said. LtCol Naugle ratified Col Lucas' advice.

Capt Prew confronted Jepsen "to see what his response was going to be." His conversation with Jepsen was by telephone and lasted "no more than 2 minutes, maybe 3 minutes." Jepsen said that "there was nothing that he would change" about his testimony and that appellant was "an outright liar." Capt Prew did nothing to verify appellant's statement because he considered himself "out of the case."

Based on appellant's statement to Capt Prew, LtCol Naugle recommended to MajGen Blot that the charges against LCpl David Arbuckle be withdrawn. LtCol Naugle told MajGen Blot that appellant "was going to absolve Arbuckle[,]" and he advised withdrawing the charges against Arbuckle. The meeting with MajGen Blot lasted 25–30 seconds, "maybe a minute." MajGen Blot told LtCol Naugle, "I go with your opinion," so the charges against David Arbuckle were withdrawn. LtCol Naugle's recommendation and MajGen Blot's decision were oral. Capt Prew accompanied LtCol Naugle but did not participate in the discussion.

Maj Walker removed Capt Prew from appellant's case and appointed Capt Delzompo. Capt Prew copied all his evidence and files and gave them to Capt Delzompo on November 27. NIS Special Agent (SA) Brooke Ann Adamson, who had investigated all four cases, had her files copied and gave them to Capt Delzompo on the same date. Both LtCol Naugle and Maj Walker instructed Capt Prew not to discuss the case with Capt Delzompo. Capt Prew was not instructed to index and catalog his files or to obtain a receipt from Capt Delzompo, and he did not do so.

The Article 32 investigation of the charges against appellant was reopened on December 9, 1991, with civilian defense counsel present and participating. Capt Bowe, the original investigating officer, conducted the reopened Article 32 investigation. SA Adamson's testimony made no mention of appellant's immunized statement. The only reference to appellant's immunized statement was during former LCpl Jepsen's testimony. The summary of Jepsen's testimony reflects the following:

> Captain Prew told me that he had interviewed McGeeney .... I was told by Captain Prew about certain specifics that Corporal McGeeney had said. He told me him and McGeeney had spoke over the phone and face to face as to these specifics....

On December 17, 1991, Capt Bowe adhered to his previous recommendation. (See 3 pages before original IO Report in the record of trial.) His transmittal of the reopened investigation makes no reference to appellant's immunized statement.

On December 26, LtCol Naugle transmitted the report of investigation to the convening authority, MajGen Blot. His supplemental pretrial advice made no mention of appellant's immunized statement. LtCol Naugle recommended that MajGen Blot "reaffirm" his earlier decision to refer the charges to a general court-martial. (Document immediately before original pretrial advice in the record.) On December 27, MajGen Blot again referred appellant's charges to a general court-martial. LtCol Naugle testified that the decisions to with-

draw the charges against LCpl David Arbuckle and to recommend rereferral of appellant's case "were unconnected."

When appellant's court-martial reconvened, defense counsel moved to dismiss the charges because of government use of immunized testimony. Capt Delzompo, trial counsel, and Capt Poague, assistant trial counsel, were present and participated during the motion hearing. When any witness testified about the substance of Capt Prew's interview of appellant, Capt Delzompo left the courtroom and Capt Poague remained.

Based on testimony and affidavits establishing the facts outlined above, the military judge found that the prosecution had established that there had been no use of appellant's immunized testimony in the decision to prosecute and refer the charges.

Jepsen testified at the motion hearing and said that his "testimony's not going to change" as a result of hearing what appellant told Capt Prew. He testified that he might add to his testimony or "clarify" it, based on what appellant said. He did not discuss the facts of the case with Capt Delzompo at any time. With Capt Delzompo absent from the courtroom, Jepsen testified that Capt Prew told him appellant said that David Arbuckle was not involved in the offenses. He testified that he told LCpl Veronica Arbuckle about his conversation with Capt Prew. He also told SA Adamson that the charges against Arbuckle were being withdrawn because of what appellant said to Capt Prew. SA Adamson knew that Capt Prew and appellant had talked, but she testified that she did not know what they had talked about.

The military judge found that Jepsen was "aware of" appellant's "immunized statement, and with that knowledge, by his own admission, his testimony was sharpened." Appellate Exhibit LXX (located as first pages of Vol. III of the record). Consequently, the military judge excluded Jepsen's testimony.

Trial counsel informed the military judge that he did not intend to call LCpl Veronica Arbuckle as a witness. Accordingly, the military judge made no rulings about her testimony.

The military judge found that SA Adamson was aware that appellant made a statement under a grant of immunity, but she was not aware of what was said. On the merits, she testified consistently with her investigative report, which predated appellant's immunized statement.

The military judge found that Staff Sergeant Franco, a member of the staff judge advocate's office, was aware that appellant had provided an immunized statement, but he was unaware of what was said. He found that SSgt Franco "merely tended to the administrative duties in preparing the case for trial."

The military judge withheld ruling on all other witnesses. Before each witness testified, he conducted a session under Article 39(a), UCMJ, 10 USC § 839(a) to determine if they were made aware of appellant's statement to Capt Prew. All witnesses on the merits testified that they did not know whether appellant made any statements or what he said. The military judge found "that none of the substantive witnesses were aware that the accused had made a statement while under the grant of immunity."

Capt Delzompo received some checks to be used as documentary evidence from Capt Prew but did not discuss the facts of the case with him. He was absent from the courtroom when Capt Prew and Private Jepsen testified about appellant's immunized statement. The military judge found that Capt Delzompo had not been exposed to any immunized testimony.

Over defense objection, the military judge permitted Capt Poague to remain as assistant trial counsel even though he had been present when Capt Prew and Pvt Jepsen testified about appellant's statements to Capt Prew. The military judge instructed Capt Poague to keep to himself what he had heard in court and not pass on any information about appellant's statements to Capt Delzompo. The military judge decided "that the curative instruction that I gave indicating that [he] not discuss that with Captain Delzompo" was a "sufficient remedy in that situation."

Based on the military judge's ruling excluding the testimony of Pvt Jepsen, the Government withdrew the charges of conspiracy (Charge I and its specification), wrongful use of lysergic acid diethylamide (Charge III and its 2 specifications), and larceny (Charge IV and its 23 specifications). The Government proceeded on one specification of making a false official statement and 15 specifications of making and uttering bad checks.

Defense counsel renewed his motion to dismiss based on LtCol Naugle's and Maj Walker's involvement in the decision to withdraw some of the charges and specifications. On the motion to dismiss, LtCol Naugle testified that Capt Delzompo recommended withdrawing some of the charges and specifications because they could not prove them without Jepsen's testimony. When asked the extent that appellant's immunized statement to Capt Prew entered into the decision, LtCol Naugle responded, "Not at all. What was driving my concerns was the judge's rulings on what evidence was going to be available after the motion sessions." LtCol Naugle had no "discussions with higher authorities" about withdrawing the charges but left the decision to Capt Delzompo. LtCol Naugle explained his reasoning: "[A]t the point he finds himself in a position that he realizes that he no longer has sufficient evidence to proceed with a charge, he has an ethical obligation on his own not to pursue those charges, and that was his decision."

Maj Walker testified that he asked Capt Delzompo what the military judge had ruled, and Capt Delzompo told him that Jepsen's testimony had been excluded. After Maj Walker asked whether the offenses could be proved by other witnesses, Capt Delzompo told Maj Walker that he was "not comfortable talking" with him "about the case and that was the end of our conversation." Maj Walker testified that because he was aware of the issue before the court regarding appellant's immunized statement, he did not pursue the conversation any further.

The military judge denied the motion to dismiss.

After three witnesses testified on the merits, one of the court members was challenged for cause by the defense, reducing the court-martial below a quorum. A defense motion for mistrial was denied.

MajGen Blot, with advice from LtCol Naugle, selected four new members. Defense counsel challenged the new members, based on their selection by MajGen Blot and LtCol Naugle, both of whom were privy to appellant's immunized statements. The military judge denied the challenge.

Appellant was convicted of making a false official statement and of 13 of the 15 bad-check specifications.

### Discussion

Appellant urges us to adopt the approach taken by the Army Court of Military Review in *United States v. Eastman,* 2 MJ 417 (1975). There, the court held that exposure to immunized statements is *prima facie* evidence of use. Appellant argues further that, even if the *Eastman* approach is not adopted, the Government failed to carry its burden to show that immunized evidence was not used by the prosecution. The Government argues that *Eastman* goes beyond what is required and that, in any event, the Government met its burden of showing that the immunized evidence was not used in appellant's prosecution.

In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that prosecutorial authorities may not use testimony compelled by a grant of immunity. We have construed "use" to include non-evidentiary use such as the decision to prosecute. *See United States v. Olivero,* 39 MJ 246, 249 (CMA 1994), *citing United States v. Kimble,* 33 MJ 284 (CMA 1991). Other federal appellate courts have construed *Kastiga*r to hold that the Government may not "alter its investigative strategy" based on immunized testimony. *See United States v. Harris,* 973 F.2d 333, 336 (4th Cir.1992). Finally, the Government may not use the testimony of a witness which was influenced by the immunized testimony. *United States v. North,* 910 F.2d 843, 860 (D.C.Cir.), *modified in part,* 920 F.2d 940, 942 (1990).

■ Under *Kastigar*, the Government has a "heavy burden" to show non-use of immunized testimony. 406 U.S. at 461, 92 S.Ct. at 1665. The Government must do more than negate the taint; it must affirmatively prove that its evidence "is derived from a legitimate source wholly independent of the compelled testimony." An appellant is "not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities." 406 U.S. at 460, 92 S.Ct. at 1665. *See United States v. Boyd,* 27 MJ 82, 85 (CMA 1988). Prosecution may proceed only "if the Government shows, by a preponderance of the evidence, that the ... decision to prosecute was untainted by" immunized testimony. *United States v. Olivero,* 39 MJ at 249, quoting *Cunningham v. Gilevich,* 36 MJ 94, 102 (CMA 1992); *see United States v. Harris,* 973 F.2d at 336.

■ Whether the Government has carried its burden to show, by a preponderance of the evidence, that prosecution is based on sources independent of immunized testimony is a preliminary question of fact. *United States v. Rivera,* 1 MJ 107, 110 (CMA 1975); *see* Mil.R. Evid. 104, Manual for Courts-Martial, United States (1995 ed.). A military judge's finding that the decision to prosecute and that all prosecution evidence is independent of the immunized testimony should not be overturned on appeal unless it is clearly erroneous or unsupported by the evidence. *See Samples v. Vest,* 38 MJ 482, 487 (CMA 1994), *citing* S. Childress & M. Davis, 1 *Federal Standards of Review* §§ 2.01 at 2–6 and 2.02 at 2–7 to 2–9 (2d ed.1992).

Applying the foregoing principles, we hold that the court below did not err in upholding the military judge's finding that appellant's prosecution was untainted.

■ Starting with the NIS investigation, the evidence shows that SA Adamson completed her investigation before appellant made his immunized statement and that she made no further investigation after it. Accordingly, we hold that the court below correctly concluded that the NIS investigation was untainted by the immunized testimony.

The decision to prosecute was made before appellant's immunized statement. Prosecutorial authorities already had an oblique admission from appellant ("I wasn't the ring-leader.") and thought they had a strong case against appellant. They hoped to try appellant before trying LCpl David Arbuckle and then use him to prosecute Arbuckle. We hold that the original decision to prosecute was untainted by the immunized testimony. *See United States v. Olivero,* 39 MJ at 249 ("Had the Government decided to prosecute appellant prior to his immunized testimony, it would be obvious that the prosecutorial decision was independent of his testimony.").

■ After the Article 32 was reopened and before MajGen Blot rereferred appellant's case, he directed that the charges against LCpl David Arbuckle be withdrawn. Although the military judge found that MajGen Blot may have been aware of appellant's immunized statement, the evidence shows that LtCol Naugle told MajGen Blot only that appellant exonerated David Arbuckle. There is no evidence that LtCol Naugle told MajGen Blot that appellant had incriminated himself.

When Capt Bowe reopened the Article 32 investigation, he was aware that appellant had made an immunized statement, but his report of investigation contains no evidence of the contents of appellant's statement and no reference to it. The record shows that MajGen Blot was presented with a report of investigation essentially unchanged after civilian defense counsel had an opportunity to cross-examine witnesses and that MajGen Blot adhered to his earlier decision. We hold that MajGen Blot's rereferral of appellant's case was untainted.

■ Turning to the prosecution team, the record amply shows that Capt Delzompo was insulated from any exposure to appellant's immunized statements. He had no conversations with his predecessor, Capt Prew, about the evidence. He did not discuss the facts with SA Adamson. He refrained from interviewing Jepsen about the facts until Jepsen actually testified.

▮ The record indicates that Capt Poague was not exposed to appellant's immunized statements until the trial began. By this time the prosecution trial strategy was already determined. During trial on the merits, the prosecution relied on witness testimony, scientific evidence, and the fruits of a search. The record reflects no use, directly or indirectly, of appellant's admission to Capt Prew. No coconspirators testified. The military judge directed Capt Poague not to disclose what he had heard to Capt Delzompo. There is no evidence that Capt Poague did not comply with that directive. While it might have been advisable for Capt Poague to have withdrawn from further participation after litigating the immunity issue, we decline to hold, based on this record, that his withdrawal was constitutionally required. This record supports the military judge's finding that the Government "did not in any way 'use'" appellant's immunized statements. *See United States v. Crowson,* 828 F.2d 1427, 1431 (9th Cir.1987) (trial strategy not tainted when based on evidence from investigation that was completed before immunized testimony); *United States v. Bianco,* 534 F.2d 501, 511 n. 14 (2d Cir.1976) (prosecutor not disqualified by reading immunized testimony where investigation already complete and prosecutor already knew everything contained in immunized testimony).

Finally, the record shows that all witnesses on the merits who testified were unaware of appellant's statement. Accordingly, we hold that their testimony was untainted.

We conclude that the record supports the finding by the military judge and the court below that the NIS investigation, prosecutorial decision, prosecution trial strategy, and the testimony of all witnesses were untainted by appellant's immunized statement.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judge SULLIVAN, and Senior Judge EVERETT concur.

CRAWFORD, Judge, concurring in the result.

*Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), upheld the constitutionality of the present federal immunity statute—18 USC §§ 6002–6003. What *Kastigar* expressly recognized is where there has been immunity followed by further prosecutions, the prosecution need only establish that the evidence is derived "from legitimate independent sources." 406 U.S. at 461, 92 S.Ct. at 1665. In effect, *Kastigar* is an independent-source and an inevitable-discovery rule. It does not preclude the non-evidentiary use of immunized testimony. *See, e.g., United States v. Olivero,* 39 MJ 246, 251 (CMA 1994)(Crawford, J., dissenting), and cases cited therein. Because of these philosophical differences with the majority opinion, I concur only in the result.