**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman ALEXANDER C. FLANNER**
**United States Air Force**

**ACM S31938 (f rev)**

**02 October 2014**

Sentence adjudged 1 April 2011 by SPCM convened at Holloman Air Force Base, New Mexico. Military Judge: Scott E. Harding (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 2 months, forfeiture of $970.00 pay per month for 2 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Nicholas D. Carter, Major Shane A. McCammon, and Captain Lauren A. Shure.

Appellate Counsel for the United States: Major Roberto Ramírez and Gerald R. Bruce, Esquire.

Before

SANTORO, WEBER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

PER CURIAM:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his conditional pleas of guilty, of divers violations of a general order by wrongfully using "Spice" and divers use of cocaine, in violation of Articles 92 and 112a, UCMJ, 10 U.S.C. §§ 912a, 892. The adjudged and approved sentence was a bad-conduct discharge, confinement for 2 months, forfeitures of $970.00 pay per month for 2 months, and reduction to E-1.

On 11 September 2013, when this case was initially before us, we remanded for completion of a new staff judge advocate recommendation (SJAR) and post-trial action because the staff judge advocate (SJA) who provided the initial SJAR was disqualified from doing so after testifying on a contested issue.

The appellant's conditional guilty plea preserved the military judge's denial of a motion to dismiss with prejudice for appellate review.[1]  Before us now, the appellant raises two additional issues he believes warrant relief:  delay in appellate review and delay in docketing the case following completion of the additional post-trial processing.[2] We disagree and affirm.

*Background*

On two occasions prior to 19 January 2011, investigators interviewed the appellant concerning his knowledge of drug use by then-Airman First Class (A1C) JF.  At the time of those interviews, the appellant was not suspected of any offenses nor was he informed of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831.  On both occasions, the appellant provided incriminating information about A1C JF.

Also on or before 19 January 2011, Captain (Capt) PC was detailed as trial counsel for A1C JF's court-martial.  On 19 January 2011, as part of his preparation for A1C JF's court-martial, Capt PC and a paralegal, Staff Sergeant (SSgt) RB, interviewed the appellant.  Capt PC did not suspect the appellant of any offense and did not advise him of his Article 31, UCMJ, rights.  The interview lasted approximately 10 minutes.  The appellant confirmed the information he had previously provided and offered the name of a possible additional witness, MR.

On 21 January 2011, Capt PC and SSgt RB had an initial interview with MR, and then on 31 January 2011, after obtaining testimonial immunity for MR, they conducted a second interview.  During this immunized interview, MR stated that he had observed the appellant, A1C JF, and another Airman, A1C DH, using cocaine.  From this point on, the appellant became the focus of a separate investigation that ultimately led to his incriminating statement, court-martial, and conditional guilty plea.

---

[1] The specific preserved issue is:  "whether dismissal of charges would be appropriate due to the accused [sic] having received de facto testimonial or transactional immunity and the use of that immunized testimony in the decision to prefer and refer charges."

[2] The appellant's supplemental assignment of errors reasserts two of his previously-assigned errors:  that the staff judge advocate was disqualified from participating in post-trial processing and that the initial staff judge advocate recommendation (SJAR) was flawed.  We previously granted him the relief requested in ordering a new SJAR.  He makes no argument that the second SJAR was flawed despite reasserting this assignment of error.  We have reviewed the second SJAR, find that it complies with the requirements of Rule for Courts-Martial 1106, and conclude that this issue merits no further discussion.

The military judge made extensive findings of fact concerning the events relevant to the motion to dismiss. His findings are not clearly erroneous, and we therefore adopt them as our own.

Following the interview of MR, Capt PC consulted with the wing SJA, Lieutenant Colonel (Lt Col) DH, regarding the impact of MR's information on A1C JF's trial, which was scheduled for 8 February 2011. To ensure that any additional information that either the appellant or A1C DH might have regarding A1C JF could be used at A1C JF's trial, a decision was made to request testimonial immunity for both the appellant and A1C DH immediately—a decision made, in part, because of the general court-martial convening authority's (GCMCA) limited availability in the days prior to A1C JF's trial.

On 1 February 2011, Lt Col DH advised the special court-martial convening authority (SPCMCA) of the immunity request and obtained his concurrence. The request was forwarded to the GCMCA's SJA, who forwarded the recommendation to the GCMCA with the following request: "we formally request that the Commander, 12th Air Force, grant testimonial immunity to be effective upon receipt of an immunity letter, to [the appellant]." The GCMCA granted the appellant testimonial immunity, but the grant and order made no reference to when it became effective. Instead, the order stated: "I hereby grant you testimonial immunity and order you to answer any questions posed to you by investigators and counsel . . . and to testify at any proceeding held pursuant to the Uniform Code of Military Justice . . . ."

The grant of immunity was transmitted to Capt DK, the assistant trial counsel for A1C JF's court-martial. On 4 February 2011, Capt DK interviewed the appellant. The interview had been arranged through the appellant's first sergeant, and the appellant initially believed he was being interviewed about A1C JF. When the interview began, however, Capt DK informed the appellant that he was suspected of having used cocaine and advised him of his Article 31, UCMJ, rights.

After acknowledging understanding of his rights, the appellant inquired what would happen if he asked to consult with an attorney. Capt DK told him that he (Capt DK) was not a decision-maker and therefore could not answer his question. A discussion ensued concerning the appellant's various options—including immunity—and their effect on his case. Capt DK never told the appellant that the GCMCA had already granted him immunity. Ultimately, Capt DK told the appellant that he could waive his rights to silence and counsel and make a statement or that the appellant could request immunity, but the outcome of that request would be uncertain. Believing that Capt DK would pursue a grant of immunity for him, the appellant said, "OK, let's play ball" or

words to that effect. He then affirmatively waived his right to counsel and to remain silent and provided the incriminating statement that led to his court-martial.

At trial, the appellant sought dismissal of both charges and specifications alleging that he had testimonial immunity and that his statement could not have been used against him. The military judge denied the motion, finding that the appellant had waived his Article 31, UCMJ, rights, and the grant of immunity was never made known to him. He also found that no promise of immunity had been made. The military judge did find, however, that Capt DK's statement professing uncertainty about whether immunity would be granted "miss[ed] the mark of forthrightness and unambiguity that is required to obtain a valid waiver of rights" and suppressed the appellant's statement. Knowing that his statement could not be introduced against him, the appellant nonetheless agreed to plead guilty, preserving for appellate review only the issue of whether he had been granted testimonial immunity by the GCMCA.

Before us, the appellant argues that the convening authority's act of signing an immunity grant immediately conferred that immunity upon him despite the fact that he never asserted his Fifth Amendment[3] or Article 31, UCMJ, rights against self-incrimination and was unaware of the convening authority's grant of immunity when he waived his rights and provided a statement. Assuming, without deciding,[4] that the grant of immunity was effective upon signature, we find that the remedy crafted by the military judge was sufficient to place the appellant "in substantially the same position as if [he] had claimed his privilege in the absence of a state grant of immunity." *See Kastigar v. United States*, 406 U.S. 441, 457 (1972) (internal quotation marks omitted) (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 (1964)).

*Consequences of Testimonial Immunity*

In the prosecution of a person who has been granted testimonial immunity, the Government must "affirmatively prove that its evidence 'is derived from a legitimate source wholly independent of the compelled testimony.'" *United States v. Mapes*, 59 M.J. 60, 67 (C.A.A.F. 2003) (quoting *Kastigar*, 406 U.S. at 460). "The question of whether the Government has shown, by a preponderance of the evidence, that it has based the accused's prosecution on sources independent of the immunized testimony is a preliminary question of fact." *Id.* (citing *United States v. McGeeney*, 44 M.J. 418, 423 (C.A.A.F. 1996)). We will not overturn the military judge's determination "unless it is

---

[3] U.S. CONST. amend. V

[4] In an order issued after the appellant's trial, a panel of this court considered and resolved this question adverse to the appellant's position in the context of an Article 62, UCMJ, 10 U.S.C. § 862, appeal by the Government. *United States v. Hathorne*, Misc. Dkt. No. 2011-02 (A.F. Ct. Crim. App. October 4, 2011). However, the scope of review under Article 62(a), UCMJ, is different than that under Article 66(b), UCMJ, 10 U.S.C. § 866(b). As the remedy crafted by the military judge in this case was sufficient, we need not decide that issue.

clearly erroneous or is unsupported by the evidence." *Id*. (citing *McGeeney*, 44 M.J. at 423).

The Court of Appeals for the Armed Forces has established four factors to be considered in deciding whether evidence is wholly independent:

> 1. Did the accused's immunized statement reveal anything "which was not already known to the Government by virtue of [the accused's] own pretrial statement"?
>
> 2. Was the investigation against the accused completed prior to the immunized statement?
>
> 3. Had "the decision to prosecute" [the] accused been made prior to the immunized statement? and,
>
> 4. Did the trial counsel who had been exposed to the immunized testimony participate in the prosecution?

*Id*. (alteration in original) (citing *United States v. England*, 33 M.J. 37, 38–39 (C.M.A. 1991)).

*Trial Court Ruling*

As discussed above, the military judge held that the appellant's statement was not given under a grant of immunity, but nonetheless suppressed the statement on the basis of Capt DK's failure to disclose its existence when discussing potential immunity with the appellant. In his ruling, comprising 30 pages of the record, the military judge made detailed findings of fact and conclusions of law. The military judge specifically found that "the other evidence that the government intends to offer in its case in chief is wholly independent of the accused's 4 February 2011 written confession and [is] admissible."

Although the military judge did not enumerate the *Mapes* factors in his ruling, trial defense counsel included them in his argument, and the military judge made specific findings of fact related to them. For example, the military judge found that the appellant's 4 February 2011 statement admitting to one-time drug use came after being confronted with independent evidence of that use. He also found that A1C JF, pursuant to his own grant of immunity, detailed more extensive drug use by the appellant. The military judge found that the appellant had twice provided investigators information adverse to A1C JF prior to that statement. The court noted that while the appellant's statement admitting to a single use of cocaine and asserting mitigating circumstances was presented to reviewing authorities, it was accompanied by A1C JF's more extensive account of the appellant's drug use and the immunized statement of MR. The military

judge went on to find that the SJA testified that her recommendation regarding the disposition of charges against the appellant would have been the same even without his immunized statements.

We find the military judge's determination that the Government's evidence was wholly independent was not clearly erroneous or unsupported by the evidence. The first *Mapes* factor weighs in favor of the Government. The facts, as determined by the military judge, indicate that not only was the information contained in the appellant's statement already known to the Government, but the appellant merely confirmed the information the Government counsel disclosed and added self-serving assertions of extenuating and mitigating circumstances. The second *Mapes* factor weighs in favor of the appellant, with some qualification. The military judge found that the investigation into the appellant's drug use continued after the 4 February 2011 statement. The military judge's findings, however, distinguish this case from those like *Mapes* where immunity is used to break a logjam of silent co-conspirators. In this case, the appellant had already provided adverse information about A1C JF to investigators, and any animosity A1C JF held towards appellant on that basis predated that statement. The third *Mapes* factor weighs slightly in favor of the appellant. The decision to prosecute had not been made. However, this literal reading must be evaluated in the context of the rest of the case. The lack of a decision was not based on scarcity of evidence, but rather, on the procedural posture of the appellant's case as it related to A1C JF's case. The SPCMCA expressed his desire to preserve the option to prosecute prior to seeking immunity, and the SJA's disposition recommendation was unchanged by the appellant's statement. The fourth *Mapes* factor weighs in the appellant's favor, as the SJA declined to sequester the appellant's statement based on her belief that it was not given pursuant to a grant of immunity. Under the standard of review set out in *Mapes* and *McGeeney*, the question is not whether this court would reach the same conclusion, but rather, whether the trial court's finding is clearly erroneous or unsupported by the record. *See also Samples v. Vest*, 38 M.J. 482 (C.M.A. 1994). We find that the military judge could reasonably have accorded substantially more weight to the first *Mapes* factor and, on these facts, found that the other evidence adduced by the Government was wholly independent of the appellant's statement.

Accordingly, we resolve the issue preserved in the conditional guilty plea adverse to the appellant and proceed to his claim of unreasonable post-trial delay.

*Post-Trial Delay*

The appellant asserts two delays in post-trial processing which he believes merit relief: the delay between sentencing and review by this court and a delay in the Government's docketing of this case with this court after completion of the subsequent action.

*Appellate Due Process*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this court. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Further, the period from action to docketing is presumptively unreasonable when it exceeds 30 days. *Moreno*, 63 M.J. at 142. When a case is not completed within the appropriate time standards, such a delay triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the Court of Appeals for the Armed Forces provided a non-exhaustive list of the types of relief available for denial of speedy post-trial review, with the nature of any relief dependent on and tailored to the circumstances of the case. 63 M.J. at 143. Such options include a reduction in confinement or forfeitures; setting aside some or all of a sentence; "a limitation upon the sentence that may be approved by a convening authority following a rehearing"; and dismissal of the charges, with or without prejudice. *Id*. However, even in instances where post-trial delay was not harmless beyond a reasonable doubt, this court cannot provide relief where "there is no reasonable, meaningful relief available." *United States v. Rodriguez-Rivera*, 63 M.J. 372, 386 (C.A.A.F. 2006).

The court-martial adjudged a sentence in appellant's case on 1 April 2011. We issued our previous decision on 11 September 2013, 894 days later, well beyond the 18-month standard. However, this presumptive unreasonableness does not entitle the appellant to relief unless it would be both reasonable and meaningful. *See Rodriguez-Rivera*, 64 M.J. at 386. Considering the totality of the circumstances, including the nature of the alleged offenses, the appellant's admission that he has suffered no prejudice, and his failure to assert his right to timely appellate review while the case was initially before us, we find that any relief we might afford would not be reasonable and would be disproportionate considering that the appellant identified no harm as a result of the delay. Setting aside the bad-conduct discharge, as appellant requests, would amount to an undeserved windfall and is neither reasonable nor warranted under the

circumstances of this case. Moreover, we find that the post-trial delay was not "so egregious that tolerating it would adversely affect the public's perception of fairness and integrity of the military justice system" and, therefore, decline to grant relief on those grounds. *See United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006) (internal quotation marks omitted) (quoting *Toohey*, 63 M.J. 361–62).

The appellant argues that the total appellate delay is properly measured not based on the date of our initial opinion in this case but rather the date of this opinion. The appellant cites no authority for his proposition that our 11 September 2013 opinion does not constitute appellate review within the meaning of *Moreno*. Assuming arguendo that appellant's assertion is correct, we nonetheless decline to order relief for the reasons set forth above. *See United States v. Merritt*, 72 M.J. 483 (C.A.A.F. 2013) (delay of 1,024 days with no showing of prejudice merited no relief).

*Delay in Docketing Following New Action*

Finally, the appellant argues that he is entitled to relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), because more than 30 days elapsed between the convening authority's action and the forwarding of the record of trial for our review.

In this case, because 65 days elapsed between the convening authority's action and docketing, the delay is facially unreasonable. Citing *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990), the appellant argues that this delay is "the least defensible of all" and that we should grant additional credit to send a clear message that a "lackadaisical attitude toward forwarding records" is unacceptable. While we agree that all involved in the military justice process should strive for efficiency, and the base legal office's handling of this case on remand was not as diligent as it should have been, the 65-day period in this case is hardly comparable to the two and a half years from action to docketing in *Dunbar*—and even in that egregious case the court found no prejudice. *Id.* at 73–74. We have considered the *Moreno* factors, *Dunbar*, and *Tardif*, and conclude that no relief is warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are

AFFIRMED.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court